## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

NGUYEN THI THUY QUYNH, an
individual; BUI THI KIM CHI, an
individual; TRAN VU KHAI, an
individual; NGO THI KIM NUNG, an
individual;

v.                                           Case No. _____

BC IMMIGRATION FUND LLC, a
Delaware limited liability company;
and BREVET CAPITAL
MANAGEMENT, LLC, a Delaware
limited liability company

_____

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, NGUYEN THI THUY QUYNH, an individual; BUI THI KIM

CHI, an individual; TRAN VU KHAI, an individual; and NGO THI KIM NUNG,

an individual, sue Defendants, BC IMMIGRATION FUND LLC ("BC Fund"), a

Delaware limited liability company, and BREVET CAPITAL MANAGEMENT,

LLC ("Brevet"), a Delaware limited liability company, and allege:

## INTRODUCTION

1.      Plaintiffs, as have many foreigners longing to receive legal immigration

status in the United States, were attracted by the allure of obtaining an "economic

visa" issued under the auspices of an EB-5 Program.[1] The Defendants sponsored such a program, creating an enterprise to develop the J.W. Marriott - Bonnet Creek, a Marriott-flagged luxury hotel, with more than 500 rooms, located on real property near Walt Disney World (the "Project"). To finance this expensive Project, Defendants sought investment dollars from foreign investors, including Plaintiffs, who relied upon representations made by Defendants and their representatives each to invest $500,000 for a total of $1.5 Million in the Project. Defendant received, accepted, and approved Plaintiffs' investments, and Plaintiffs proceeded to apply for their respective legal immigration status believing that all investment pre-conditions had been met.

2.      Plaintiffs' investments, however, foundered when Defendants, without legal justification, and for reasons evidencing the abject failure of Defendants' administration of the fund-raising process, returned Plaintiffs' investments claiming a lack of proof of origin of the funds. Defendants then compounded their error by soliciting Plaintiffs to engage in immigration fraud by resubmitting their investment

---

[1] The United States Citizenship and Immigration Service ("USCIS") administers the EB-5 Immigrant Investor Program. The EB-5 program supports economic growth in the US through capital investment by foreign investors and resulting job creation in exchange for being granted legal immigration status.

COMPLAINT AND DEMAND FOR JURY TRIAL

funding which Defendants would then backdate to the time of the original investments,[2] with the unsettling representation that *"we do this all the time."*

3.     Unwilling to be conscripted into Defendants' scheme, Plaintiffs find themselves having lost a prime investment opportunity by Defendants' untimely and unlawful refund of their investment in the same amounts originally transacted. For these losses, Plaintiffs bring these actions for breaches of contracts and breaches of fiduciary duties.

## PARTIES, JURISDICTION, AND VENUE

4.     The amount in controversy in this lawsuit exceeds $75,000.

5.     At all times material hereto, NGUYEN THI THUY QUYNH, an individual, has been a resident and citizen of Vietnam ("Investor Nguyen").

6.     At all times material hereto, BUI THI KIM CHI, an individual, has been a resident and citizen of Vietnam ("Investor Bui").

7.     At all times material hereto, TRAN VU KHAI has been a resident and citizen of Vietnam, and the son of Investor Bui ("Tran").

8.     At all times material hereto, NGO THI KIM NUNG, an individual, has been a resident and citizen of Vietnam ("Investor Ngo").

---

[2] As explained in detail below, the timing of the investment submission had a profound effect. Prior to November 21,2019, Plaintiffs could have invested $500,000 as a qualified investment amount. After November 21, 2019, the qualified investment amount had increased to $1,800,000.

9.     At all times material hereto, BC IMMIGRATION FUND LLC, has been a Delaware limited liability company.

10.     At all times material hereto, BREVET CAPITAL MANAGEMENT, LLC, has been a Delaware limited liability company.

11.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and § 1332 (diversity). The parties to this lawsuit are completely diverse in citizenship and the amount in controversy exceeds $75,000, exclusive of interest and costs.

12.     Under 28 U.S.C. § 1391, venue is proper in this district because a substantial portion of the events or omissions giving rise to Plaintiffs' claims occurred in this district. In addition, the project at issue in the lawsuit is located in this district.

## GENERAL ALLEGATIONS AND BACKGROUND

13.     The United States Citizenship and Immigration Service ("USCIS") administers the EB-5 Immigrant Investor Program. The EB-5 program supports economic growth in the US through capital investment by foreign investors and resulting job creation for specific, designated projects.

14.     Defendants conceived and promoted the "Project" at issue to develop, construct, and operate the J.W. Marriott-Bonnet Creek, a Marriott-flagged luxury hotel, with more than 500 rooms, located on real property near Walt Disney World.

The Project would be located within an area which, at the time, had been designated a state-designated targeted employment area ("TEA"). EB-5 investors, including Plaintiffs herein, find TEA areas attractive because projects located in a TEA require lesser qualified investment amounts.

A. **STRUCTURE OF AN EB-5 INVESTMENT PROJECT**

15.    Projects financed through an EB-5 program operate through a structure comprised of a variety of related organizations, each serving a distinct purpose, including:

a. **Regional Centers:** EB-5 programs often operate under the auspices of a regional center.[3] Here, in 2014, once approved by USCIS, BC Central Florida Regional Center LLC, a Delaware limited liability company ("Regional Center"), served as the regional center to finance development projects and economic activities in central and south Florida, including Orange County, Florida. In 2019, the USCIS approved the Regional Center's request for exemplar approval of the Project;

---

[3] An EB-5 regional center serves as a service agent organization designated by USCIS to **sponsor capital investment projects for investment by EB-5 investors.** Regional centers operate as investment mechanism for investors and companies looking to complete a project under the EB-5 Program. Regional center can take advantage of **indirect and induced (activity from economic impact) job creation**, not just direct job creation, making it easier to reach the job creation requirements under the USCIS rules.

b. **New Commercial Enterprise/Project Lender ("NCE"):** The NCE, as defined in 8 C.F.R. § 204.6(e), serves as the entity into which EB-5 investors directly invest their funds. Here, Defendant BC Fund served as the NCE. As the Project Lender, BC Fund accepted investment funds and loaned them for the development of the Project;

c. **Fund Manager:** The Fund Manager oversees the management of the NCE. Here, EB-5 Solutions, LLC served as the Fund Manager. EB-5 Solutions, LLC delegated that responsibility to Defendant Brevet;

d. **Project Loan Borrower:** The Project Loan Borrower borrows the funds from the Project Lender to development Project. Here, DCS Real Estate Investments V-A, LLC served as the Project Loan Borrower; and

e. **Project Company/Job Creating Entity ("JCE"):** The Project Company oversees the development of the Project. Here, DCS Real Estate Investments V, LLC served as the JCE.

**B. SCOPE OF THE PROJECT**

16.    Relevant to this lawsuit, BC Fund endeavored to raise and spend up to $70 million, contributed by up to 140 EB-5 program investors, to finance the development, construction, and operation of the Project. The investments made by the BC Fund would create more than 4,900 new jobs in the Orlando, Florida area,

which was more than sufficient to meet the requirements of the EB-5 program as pertaining to the Project.

17.     Under 8 C.F.R. § 204.6(m)(7), as a precondition to filing an Immigrant Petition by Alien Investor (USCIS Form I-526), the application must establish an investment into an NCE (here, the BC Fund through the Regional Center) establishing that the investment in the NCE would fund the JCE which will lead to job creation, whether directly nor indirectly.

18.     Under 8 C.F.R. § 204.6(j)(3), each petition must include evidence that the investor's funds derived from a lawful source.

19.     An investor's contribution must be an at-risk capital investment. Each investor must pay a separate administrative fee to allow for administration of the fund.

20.     The Plaintiffs complied with all these requirements. The invested funds had been the funds had been secured in a controlled deposit account at Northern Trust. Once the investors filed their I-526 petition and the BC Fund had received notice of filing, the funds (including both the capital contribution and the required administrative fee) would be released from Northern Trust to the BC Fund.

21.     The controlled deposit account operated like an escrow account and in accordance with USCIS constraints. The funds had to be irrevocably committed for use by the JCE to develop, construct, and manage the Project.

22.     According to Sixth Amended and Restated Liability Company Agreement for BC Fund ("BC Fund LLC Agreement"), funds could only be refunded if investor's I-526 petition were denied. (*See* BC Fund LLC Agreement, § 8.3(b).)

23.     Once BC Fund had received up to $70 million from foreign investors, BC Fund, as Project Loan Lender, could lend the funds to DCS Real Estate Investments V-A, LLC, as Project Loan Borrower. The Project Loan Borrower could invest the funds in DCS Real Estate Investments V, LLC, the JCE or "Project Company."

24.     The Project Company could use funds derived from EB-5 investors, developer equity, and a construction loan to develop the Project.

25.     The diagram below depicts the deployment of funds generated through an EB-5 program specific to the Project at issue:



26.     Prior to November 21, 2019, the threshold qualified investment amount for an EB-5 program investment was $1,000,000. If the investment project were located in a state-designated targeted employment area ("TEA"),[4] the investment threshold had been lowered to $500,000. However, after November 20, 2019, the

---

[4] The USCIS gives special consideration to Target Employment Areas ("TEA") areas defined as those marked with high unemployment or in rural areas, lowering the amount of a qualified investment to support an EB-5 petition.

threshold investment amount for an EB-5 program investment had been increased to $1,800,000 but lowered to $900,000 for projected located in a TEA.

27.    At the time the Investors made their investment in the Project, the Project had been qualified for TEA treatment; however, by the time the Investors would have resubmitted their investment funds to the Project as the events described below unfolded, the TEA qualification had been removed.

## C. THE INVESTORS

28.    Plaintiffs, Investor Nguyen, Investor Bui, and Investor Ngo (together, "Investors") reside as citizens in Vietnam. They sought to be qualified as alien entrepreneurs under the EB-5 program Each made capital investments of $500,000 in the Project which, at the time in question, lay in a qualified TEA. The Investors also have family members who would been permitted to enter the United States once the Investors received provisional immigration status That is, provisional immigration status would be granted to the minor children of the Investors without the requirement of a separate EB-5 program investment. In particular, in accordance with applicable regulations, Investor Bui anticipated bringing her then-minor child, Tran, to the United States under Investor Bui's provisional immigration status.

29.    Having decided to make an EB-5 qualified investment, the Investors selected the Project, and each amassed $500,000 to invest in the BC Fund. Through their investments, the Investors would become "Class C Members" of the BC Fund,

which meant—in accordance with the Subscription Agreement of BC Fund—the Investors' returns would be based on the performance of the Project.

30.     In October 2019, BC Fund's immigration counsel provided a detailed I-526 Project Package (1,500+ pages of information), including a letter to USCIS with a detailed history and summary of the Project and all items relevant to the Investors' I-526 Petitions. A true and correct copy of the October 2019 cover letter is attached hereto as **Exhibit "A."**

31.     According to BC Fund's immigration counsel in their cover letter to USCIS:

> In compliance with the regulations and governing precedent decisions, the full amount of the capital contribution has been irrevocably committed to investment solely in the Fund. All $500,000 of the funds will be released for purposes of furthering the Project as described in the comprehensive business plan […] As described in the PPM […], no portion of the investors' contributions has been or will be applied towards legal service fees or administrative/marketing costs of the Fund, or fees associated with the Fund's credit facilities […]

32.     Through November 2019, BC Fund's immigration counsel, together with the Fund Manager, engaged in a painstaking and detailed review of the source of funds for each of the Investors.

33.     Concurrently with these efforts, on or about October 31, 2019, Investor Ngo signed the Subscription Agreement of BC Fund ("Ngo Subscription Agreement") A copy of the Ngo Subscription is attached hereto as **Exhibit "B."**

34.     On <u>November 4, 2019</u>, BC Fund's immigration counsel wrote to Investor Ngo's immigration counsel and confirmed approval and acceptance of the source of funds information for Investor Ngo, and authorized submission of Investor Ngo's I-526 Petition, including the detailed I-526 Project Package prepared by BC Fund's immigration counsel. A copy of this November 4, 2019 communication is attached hereto at **Exhibit "C."**

35.     Investor Ngo transmitted the required $500,000 investment, plus the required $50,000 administrative fee, to the bank account of and for BC Fund, as shown below:



36.     On <u>November 19, 2019</u>, BC Fund wrote to Investor Ngo's immigration counsel and confirmed acceptance of Investor Ngo's subscription/investment ("Ngo Acceptance"). BC Fund, through the Fund Manager, also provided a bank statement showing arrival of Investor Ngo's funds. A copy of the Ngo Acceptance is attached here to as **Exhibit "D."**

37.     On or about <u>November 5, 2019</u>, Investor Bui signed the Subscription Agreement of BC Fund ("Bui Subscription Agreement") A copy of the Bui Subscription is attached hereto as **Exhibit "E."**

38.     On November 14, 2019, BC Fund's immigration counsel wrote to Investor Bui's immigration counsel and confirmed approval and acceptance of the source of funds information for Investor Bui, and authorized submission of Investor Bui's I-526 Petition, including the detailed I-526 Project Package prepared by BC Fund's immigration counsel. A copy of this November 14, 2019 communication is attached hereto at **Exhibit "F."**

39.     Investor Bui transmitted the required $500,000 investment, plus the required $50,000 administrative fee, to the bank account of and for BC Fund, as shown below:



40.     On November 19, 2019, BC Fund wrote to Investor Bui's immigration counsel and confirmed acceptance of Investor Bui's subscription/investment ("Bui Acceptance"). BC Fund, through the Fund Manager, also provided a bank statement showing arrival of Investor Bui's funds. A copy of the Bui Acceptance is attached here to as **Exhibit "G."**

41.     On or about November 8, 2019, Investor Nguyen signed the Subscription Agreement of BC Fund ("Bui Subscription Agreement") A copy of the Bui Subscription is attached hereto as **Exhibit "H."**

42.     On November 14, 2019, BC Fund's immigration counsel wrote to Investor Nguyen's immigration counsel and confirmed approval and acceptance of the source of funds information for Investor Nguyen, and authorized submission of Investor Nguyen's I-526 Petition, including the detailed I-526 Project Package prepared by BC Fund's immigration counsel. A copy of this November 14, 2019 communication is attached hereto at **Exhibit "I."**

43.     Investor Nguyen transmitted the required $500,000 investment, plus the required $50,000 administrative fee, to the bank account of and for BC Fund, as shown below:

```
TRN                    CHIPS SSN:               ORG=          "FTR"                    550,000.00
ORG=          BANK OF AMERICA N.A. 335 MADISON AVENUE NEW YORK, N.Y. 10017
ORG=          ANH H VO#MAI Q NGUYEN 880 EVANS RD MILPITAS CA 950353406
US OBK=          BANK OF AMERI
CA N.A. 335 MADISON AVENUE NEW YORK, N.Y. 10017 OBI=SERVICES WIRE ON
BEHALF OF INVESTOR // NGUYEN, THI THUY QUYNH INTO BCI //F CLASS C
SRF=          ORF=          BNF=          BC IMMIGRATION
FUND LLC C/O SS&C TECHNOLOGIES INC 80 LAMBERTON R
OAD WINDSOR, CT 06095  RECEIVED FROM FRB AT 14:53 CT ON 11*14*19
```

44.     On November 19, 2019, BC Fund wrote to Investor Nguyen's immigration counsel and confirmed acceptance of Investor Nguyen's subscription/ investment ("Nguyen Acceptance"). BC Fund, through the Fund Manager, also provided a bank statement showing arrival of Investor Nguyen's funds. A copy of the Nguyen Acceptance is attached here to as **Exhibit "J."**

45.     Having signed the agreements, having confirmed their source of fund information, having invested the funds and paid the administrative fees, having received confirmation of the acceptance of their subscriptions, and having received

confirmation of the arrival of their invested funds, on <u>November 20, 2019</u> (the last day before the threshold investment levels for the EB-5 program changed), the Investors filed their EB-5 program applications.

46.     On <u>December 6, 2019</u>, USCIS wrote to Investor Ngo's immigration counsel, provided a Form I-797C, Notice of Action, and confirmed a priority date of <u>November 20, 2019</u> for Investor Ngo's I-526 (Immigrant Petition by Alien Entrepreneur). A true and correct copy of Investor Ngo's Form I-797C is attached here to as **Exhibit "K."**

47.     On <u>December 6, 2019</u>, USCIS wrote to Investor Bui's immigration counsel, provided a Form I-797C, Notice of Action, and confirmed a priority date of <u>November 20, 2019</u> for Investor Bui's I-526 (Immigrant Petition by Alien Entrepreneur). A true and correct copy of Investor Bui's Form I-797C is attached here to as **Exhibit "L."**

48.     On <u>December 6, 2019</u>, USCIS wrote to Investor Nguyen's immigration counsel, provided a Form I-797C, Notice of Action, and confirmed a priority date of <u>November 20, 2019</u> for Investor Nguyen's I-526 (Immigrant Petition by Alien Entrepreneur). A true and correct copy of Investor Nguyen's Form I-797C is attached here to as **Exhibit "M."**

### D. <u>PROBLEMS CAUSED BY DEFENDANTS</u>

49.     Even though throughout <u>October and November of 2019</u>, BC Fund's immigration counsel, together with the Fund Manager, had engaged in a painstaking and detailed review of the source of funds for each of the Investors, and had approved all documentation provided regarding the source of funds, and had advised the Investors' counsel that they were authorized to proceed with their respective I-526 Petitions, they reversed course and rejected the investments.

50.     In or about <u>February 26, 2020</u>—more than three months after the initial approvals—the Fund Manager wrote to Investor Ngo, advised of the return of Investor Ngo's funds, asked that Investor Ngo re-invest to meet some new criteria, and warned Investor Ngo that if he did not so re-invest, the Fund Manager would void Investor Ngo's subscription/investment in BC Fund. The Fund Manager further advised Investor Ngo that if they re-invested (in February 2020), that their original I-526 Petition may still be approved, as if backdated to the date of the original investment submission.

51.     Likewise, on or about <u>February 26, 2020</u>, the Fund Manager wrote to Investor Bui, advised of the return of Investor Bui's funds, asked that Investor Bui re-invest to meet some new criteria, and warned Investor Bui that if he did not so re-invest, the Fund Manager would void Investor Bui's subscription/investment in BC Fund. The Fund Manager further advised Investor Bui that if they re-invested (in

February 2020), that his original I-526 Petition may still be approved, as if backdated to the date of the original investment submission.

52.     Finally, on or about <u>February 26, 2020</u>, the Fund Manager wrote to Investor Nguyen, advised of the return of Investor Nguyen's funds, asked that Investor Nguyen re-invest to meet some new criteria, and warned Investor Nguyen that if he did not so re-invest, that the Fund Manager would void Investor Nguyen's subscription/investment in BC Fund. The Fund Manager further advised Investor Nguyen that if they re-invested (in February 2020), that their I-526 Petition may still be approved, as if backdated to the date of the original investment submission.

53.     The USCIS bases the priority date for an I-526 Petition on the receipt of a completed I-526 Petition, also based on acceptance and approval of irrevocably committed funds invested by the respective investor/petitioner. The Investors had met these criteria by November 20, 2020.

54.     By returning the Investors' funds, the Fund Manager negated and breached the requirement that the funds had been irrevocably committed to the Project. Because BC Fund's immigration counsel had acknowledged the irrevocable commitment of those funds, the only basis to return those funds would have been the denial of the investor's I-526 petition by USCIS, or through a redemption in accordance with BC Fund's governing documents. Neither of those events happened here.

55.     Once the Fund Manager negated the irrevocable commitment of funds requirement, the Investors lost their respective priority dates for their USCIS I-526 Petitions.

56.     The loss of priority date proved catastrophic for the Investors. After November 20, 2019, the qualified investment threshold for an EB-5 program investment had been raised from $1,000,000 to $1,800,000. The qualified investment threshold for a project located in a TEA had been raised from $500,000 to $900,000.

57.     Having had their investments rejected, if the Investors "re-invested," their Petitions would have been reassigned a new and later priority date, which would have imposed the increased qualified investment threshold amounts. This meant that at a minimum Investors could no longer invest $500,000 each to qualify, they would have had to submit at least $900,000, and more likely $1,800,000 if the Project could no longer be classified as a TEA project.

58.     Due to the passage of time, Investor Bui's child, Tran, no longer qualified for entry to the United States under Investor Bui's provisional immigration status. That is, due to the return of Investor Bui's funds and the resulting issues described herein, Tran would have to submit his own separate I-526 application, with an EB-5 program investment of at least $900,000.

59.     Instead of acknowledging this problem or its role in causing it, the Fund Manager (Brevet) took the position that a newly submitted investment would somehow relate back to the priority date of the original I-526 Petitions and would meet USCIS's requirements of irrevocably committed funds as of a date more than three months prior.

60.     The actions suggested by Defendants would be nothing short of immigration fraud, and the Investors declined the suggestion, leaving them with no qualified investment upon which to base their I-526 Petitions. To requalify, the Investors each would have to invest at least $900,000, and more likely $1,800,000.

61.     As the direct and proximate result of Defendants' actions, the Investors lost: (a) their priority date for their respective I-526 Petitions; (b) their opportunity to invest in a TEA; and (c) their opportunity to make a qualified investment of $500,000.

62.     As a direct and proximate cause of Defendants actions, Plaintiffs have suffered, and continue to suffer, direct and consequential damages.

63.     Prior to the filing of this lawsuit, Plaintiffs presented a demand to counsel for Defendants in writing, to remediate the damage caused by Defendants. Defendants rejected this demand.

64.     Plaintiffs have retained the law firm of Byrd Campbell, P.A., agreeing to pay a reasonable fee for its services.

65.     Plaintiffs are entitled to recover their attorneys' fees and costs.

## COUNT I
### (BREACH OF CONTRACT (INVESTOR NGUYEN))

66.     Investor Nguyen re-alleges and incorporates paragraphs 1-65, above, as though fully set forth herein.

67.     Investor Nguyen and BC Fund entered a valid contract (the Subscription Agreement).

68.     In November 2019, Defendants confirmed approval and acceptance of the source of funds information for Investor Nguyen.

69.     In November 2019, Defendants confirmed acceptance of Investor Nguyen's subscription agreement and investment in BC Fund.

70.     The contract does not permit Defendants to return Investor Nguyen's invested capital for any arbitrary reason. The only permitted event under which any refund to an investor would occur would be denial of the investor's I-526 petition.

71.     In February 2020, Defendants wrote to Investor Nguyen and returned their invested funds based on some belated concern about "source of funds." Defendants advised that Investor Nguyen could "re-invest" and maintain the same application priority date (which is false).

72.     Defendants' unauthorized return of funds is a material breach of contract.

73.    Defendants' actions have deprived Investor Nguyen of the benefits of their contract.

74.    Investor Nguyen has suffered damages caused by Defendants' breach.

WHEREFORE, Investor Nguyen respectfully requests the Court enter judgment against Defendants for damages, attorneys' fees, and costs.

## COUNT II
## (BREACH OF CONTRACT (INVESTOR BUI))

75.    Investor Bui re-alleges and incorporates paragraphs 1-65, above, as though fully set forth herein.

76.    Investor Bui and BC Fund entered into a valid contract (the Subscription Agreement).

77.    In November 2019, Defendants confirmed approval and acceptance of the source of funds information for Investor Bui.

78.    In November 2019, Defendants confirmed acceptance of Investor Bui's subscription agreement and investment in BC Fund.

79.    The contract does not permit Defendants to return Investor Bui's invested capital for any arbitrary reason. The only permitted event under which any refund to an investor would occur would be denial of the investor's I-526 petition.

80.    In February 2020, Defendants wrote to Investor Bui and returned their invested funds based on some belated concern about "source of funds." Defendants

advised that Investor Bui could "re-invest" and maintain the same application priority date (which is false).

81.    Defendants' unauthorized return of funds is a material breach of contract.

82.    Defendants' actions have deprived Investor Bui of the benefits of their contract.

83.    Investor Bui has suffered damages caused by Defendants' breach.

WHEREFORE, Investor Bui respectfully requests the Court enter judgment against Defendants for damages, attorneys' fees, and costs.

## COUNT III
## (BREACH OF CONTRACT (TRAN))

84.    Tran re-alleges and incorporates paragraphs 1-65, above, as though fully set forth herein.

85.    Investor Bui and BC Fund entered into a valid contract (the Subscription Agreement). As the then-minor child of Investor Bui, Tran was an intended third-party beneficiary of the contract between Investor Bui and BC Fund.

86.    In November 2019, Defendants confirmed approval and acceptance of the source of funds information for Investor Bui.

87.    In November 2019, Defendants confirmed acceptance of Investor Bui's subscription agreement and investment in BC Fund.

88.     The contract does not permit Defendants to return Investor Bui's invested capital for any arbitrary reason. The only permitted event under which any refund to an investor would occur would be denial of the investor's I-526 petition.

89.     In February 2020, Defendants wrote to Investor Bui and returned their invested funds based on some belated concern about "source of funds." Defendants advised that Investor Bui could "re-invest" and maintain the same application priority date (which is false).

90.     Defendants' unauthorized return of funds is a material breach of contract.

91.     Defendants' actions have deprived Investor Bui of the benefits of their contract. Defendants' actions have deprived intended third-party beneficiary Tran of the benefits of the contract between Investor Bui and BC Fund

92.     Tran has suffered damages caused by Defendants' breach.

WHEREFORE, Tran respectfully requests the Court enter judgment against Defendants for damages, attorneys' fees, and costs.

## COUNT IV
## (BREACH OF CONTRACT (INVESTOR NGO))

93.     Investor Ngo re-alleges and incorporates paragraphs 1-65, above, as though fully set forth herein.

94.     Investor Ngo and BC Fund entered into a valid contract (the Subscription Agreement).

95.    In November 2019, Defendants confirmed approval and acceptance of the source of funds information for Investor Ngo.

96.    In November 2019, Defendants confirmed acceptance of Investor Ngo's subscription agreement and investment in BC Fund.

97.    The contract does not permit Defendants to return Investor Ngo's invested capital for any arbitrary reason. The only permitted event under which any refund to an investor would occur would be denial of the investor's I-526 petition.

98.    In February 2020, Defendants wrote to Investor Ngo and returned their invested funds based on some belated concern about "source of funds." Defendants advised that Investor Ngo could "re-invest" and maintain the same application priority date (which is false).

99.    Defendants' unauthorized return of funds is a material breach of contract.

100.    Defendants' actions have deprived Investor Ngo of the benefits of their contract.

101.    Investor Ngo has suffered damages caused by Defendants' breach.

WHEREFORE, Investor Ngo respectfully requests the Court enter judgment against Defendants for damages, attorneys' fees, and costs.

## COUNT V
## (BREACH OF FIDUCIARY DUTY (INVESTOR NGUYEN))

102.    Investor Nguyen re-alleges and incorporates paragraphs 1-65, above, as though fully set forth herein.

103.    Investor Nguyen is a resident and citizen of Vietnam who does not have any independent knowledge of whether and how Defendants review and approve EB-5 program investments in support of immigration petitions.

104.    Investor Nguyen reposed trust and confidence in Defendants to advise Investor Nguyen correctly regarding Investor Nguyen's proposed source of funds for their investment in BC Fund.

105.    Investor Nguyen reposed trust and confidence in Defendants to advise Investor Nguyen correctly regarding Defendants' acceptance of Investor Nguyen's investment in BC Fund.

106.    Defendants undertook such trust and assumed a duty to advise Investor Nguyen correctly.

107.    In November 2019, Defendants confirmed approval and acceptance of the source of funds information for Investor Nguyen.

108.    In November 2019, Defendants confirmed acceptance of Investor Nguyen's subscription agreement and investment in BC Fund.

109.    In February 2020, Defendants wrote to Investor Nguyen and returned their invested funds based on some belated concern about "source of funds."

Defendants advised that Investor Nguyen could "re-invest" and maintain the same application priority date (which is false).

110.   Defendants' unauthorized return of funds was a breach of Defendants' fiduciary duty to Investor Nguyen.

111.   Defendants' legally incorrect and false advice to Investor Nguyen about re-investment of funds was a breach of Defendants' fiduciary duty to Investor Nguyen.

112.   Investor Nguyen has suffered damages caused by Defendants' breaches of fiduciary duty.

113.   Investor Nguyen reserves the right to seek leave of Court to amend this claim to seek punitive damages, upon a proper proffer.

WHEREFORE, Investor Nguyen respectfully requests the Court enter judgment against Defendants for damages, attorneys' fees, and costs.

## COUNT VI
## (BREACH OF FIDUCIARY DUTY (INVESTOR BUI))

114.   Investor Bui re-alleges and incorporates paragraphs 1-65, above, as though fully set forth herein.

115.   Investor Bui is a resident and citizen of Vietnam who does not have any independent knowledge of whether and how Defendants review and approve EB-5 program investments in support of immigration petitions.

116.    Investor Bui reposed trust and confidence in Defendants to advise Investor Bui correctly regarding Investor Bui's proposed source of funds for their investment in BC Fund.

117.    Investor Bui reposed trust and confidence in Defendants to advise Investor Bui correctly regarding Defendants' acceptance of Investor Bui's investment in BC Fund.

118.    Defendants undertook such trust and assumed a duty to advise Investor Bui correctly.

119.    In November 2019, Defendants confirmed approval and acceptance of the source of funds information for Investor Bui.

120.    In November 2019, Defendants confirmed acceptance of Investor Bui's subscription agreement and investment in BC Fund.

121.    In February 2020, Defendants wrote to Investor Bui and returned their invested funds based on some belated concern about "source of funds." Defendants advised that Investor Bui could "re-invest" and maintain the same application priority date (which is false).

122.    Defendants' unauthorized return of funds was a breach of Defendants' fiduciary duty to Investor Bui.

123.    Defendants' legally incorrect and false advice to Investor Bui about re-investment of funds was a breach of Defendants' fiduciary duty to Investor Bui.

124.   Investor Bui has suffered damages caused by Defendants' breaches of fiduciary duty.

125.   Investor Bui reserves the right to seek leave of Court to amend this claim to seek punitive damages, upon a proper proffer.

WHEREFORE, Investor Bui respectfully requests the Court enter judgment against Defendants for damages, attorneys' fees, and costs.

## COUNT VII
## (BREACH OF FIDUCIARY DUTY (INVESTOR NGO))

126.   Investor Ngo re-alleges and incorporates paragraphs 1-65, above, as though fully set forth herein.

127.   Investor Ngo is a resident and citizen of Vietnam who does not have any independent knowledge of whether and how Defendants review and approve EB-5 program investments in support of immigration petitions.

128.   Investor Ngo reposed trust and confidence in Defendants to advise Investor Ngo correctly regarding Investor Ngo's proposed source of funds for their investment in BC Fund.

129.   Investor Ngo reposed trust and confidence in Defendants to advise Investor Ngo correctly regarding Defendants' acceptance of Investor Ngo's investment in BC Fund.

130.   Defendants undertook such trust and assumed a duty to advise Investor Ngo correctly.

131.   In November 2019, Defendants confirmed approval and acceptance of the source of funds information for Investor Ngo.

132.   In November 2019, Defendants confirmed acceptance of Investor Ngo's subscription agreement and investment in BC Fund.

133.   In February 2020, Defendants wrote to Investor Ngo and returned their invested funds based on some belated concern about "source of funds." Defendants advised that Investor Ngo could "re-invest" and maintain the same application priority date (which is false).

134.   Defendants' unauthorized return of funds was a breach of Defendants' fiduciary duty to Investor Ngo.

135.   Defendants' legally incorrect and false advice to Investor Ngo about re-investment of funds was a breach of Defendants' fiduciary duty to Investor Ngo.

136.   Investor Ngo has suffered damages caused by Defendants' breaches of fiduciary duty.

137.   Investor Ngo reserves the right to seek leave of Court to amend this claim to seek punitive damages, upon a proper proffer.

WHEREFORE, Investor Ngo respectfully requests the Court enter judgment against Defendants for damages, attorneys' fees, and costs.

## <u>DEMAND FOR TRIAL BY JURY</u>

Plaintiffs demand a trial by jury on all matters so triable.

Dated: April 5, 2021.

/s/ Thomas C. Allison

**Tucker H. Byrd**
Florida Bar No.: 381632
**Thomas C. Allison**
Florida Bar No.: 35242
**BYRD CAMPBELL, P.A.**
180 Park Avenue North, Suite 2A
Winter Park, Florida 32789
Telephone: (407) 392-2285
Facsimile: (407) 392-2286
Primary Email:  TByrd@ByrdCampbell.com
Primary Email:  TAllison@ByrdCampbell.com
Secondary Email:  EGarcia@ByrdCampbell.com
Secondary Email:  AGildner@ByrdCampbell.com

**Edward C. Beshara**
Florida Bar No.: 363707
**BESHARA GLOBAL MIGRATION LAW FIRM**
555 Winderley Place, Suite 300
Orlando/Maitland, FL 32751
Telephone: (407) 571-6878
Facsimile: (407) 571-6879
Primary Email:  ebeshara@besharapa.com
Secondary Email:      lina@besharapa.com

**Charles J. Leamy,** *pro hac vice forthcoming*
New York Bar No. (1st Dept.)
Pennsylvania Bar No.: 88405
Colorado Bar No.: 22244
105 Depot Street, # 1147
Stowe, VT 05672
Primary Email:  chuck_leamy@yahoo.com